UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| MICHAEL BILSON, | ) | CASE NO. C05-0047-JCC-MAT |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| SHERIFF BILL ELFO, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

INTRODUCTION

Plaintiff Michael Bilson, proceeding *pro se* and *in forma pauperis*, has filed a civil rights action pursuant to 42 U.S.C. § 1983. He alleges that while he was incarcerated in the Whatcom County Jail, he received constitutionally inadequate medical care. Defendants have filed a motion for summary judgment. Plaintiff did not file a response. For the reasons discussed below, the court recommends that defendants's motion be granted and the complaint and this action be dismissed with prejudice.

BACKGROUND

The declarations and medical records submitted by defendants in support of their motion

...

01 for summary judgment establish the following facts:

02     On September 20, 2004, plaintiff was booked into Whatcom County Jail ("Jail") in

03 Bellingham, Washington. Plaintiff informed Jail staff that he had a history of panic attacks and was

04 on a medication called "Alprazolam."[1] This medication is considered a narcotic by the Jail and the

05 Jail has a policy against dispensing narcotics because they can be abused – either by an inmate

06 pretending to take them and then selling them to other inmates, or by providing an incentive to

07 attack an inmate to steal the narcotics. (Dkt. #25, Declaration of Wendy Jones). Because

08 narcotics can be abused in this manner, the Jail prefers to dispense an alternative, non-narcotic,

09 medication whenever possible. (*Id.*)

10     After obtaining a release from plaintiff, Jail staff contacted plaintiff's doctor in Illinois to

11 inquire about his need for the medication. Plaintiff's doctor confirmed that plaintiff had a history

12 of panic attacks and was receiving Alprazolam to prevent the attacks. (Dkt. #25, Declaration of

13 Shari Holst at 1). Plaintiff's doctor also told Jail staff that if plaintiff were confined at the Jail for

14 less than a week, that he should continue to receive Alprazolam. (*Id.*) Plaintiff's doctor thus

15 implied that if plaintiff stayed at the Jail for more than one week, it would be acceptable to switch

16 him to a non-narcotic medication.

17     Plaintiff ended up staying at the Jail until January 20, 2005, for a total of four months.

---

[1] Counsel for defendants refers to this medication as "alpazalan," in the motion for summary judgment, while the Jail's nurse and psychiatrist refer to it as "Alprazolam." In this Report & Recommendation, the court will adopt the term "Alprazolam," since that is the term used by the medical professionals.

REPORT AND RECOMMENDATION
PAGE -2

01 During that time, he saw a psychiatrist approximately five times.[2] After the first visit on
02 September 29, 2004, plaintiff was prescribed Remeron for his panic attacks. (Dkt. #25,
03 Declaration of Dr. Marvin Miller at 2). At his second visit, on October 13, 2004, plaintiff reported
04 an improvement in sleep and mood, according to the psychiatrist's notes. (*Id.*, Attached Medical
05 Records at 13). At his third visit, on October 26, 2004, a different psychiatrist examined plaintiff
06 and noted afterwards that he seemed "accepting of policy re: BZD's [the class of drugs that
07 includes Alprazolam] – not angry or blaming." (*Id.* at 12).

08 During the month following his third meeting with a psychiatrist, plaintiff appears to have
09 suffered several panic attacks and requested his old medication on at least two occasions. (Dkt.
10 #25 at 3). He was examined again on December 3, 2004 and reported having had two severe and
11 two mild panic attacks. (*Id.* at 4). Plaintiff complained that the Remeron was not effective and
12 that he did not like its side effects. (*Id.*) The Jail psychiatrist lowered the dosage of Remeron and
13 prescribed Imipramine to reduce the side effects. (*Id.*)

14 Plaintiff's final examination appears to have been on January 7, 2005. At this visit,
15 according to the psychiatrist's notes, plaintiff reported that the "panic attacks are a bit better," and
16 that he slept better. (Dkt. #25, Attached Medical Records at 9). Plaintiff was released from the
17 Jail on January 20, 2005. (Dkt. #25 at 4).

18 On December 26, 2004, plaintiff signed the complaint in this action. On January 27, 2005,
19 he was granted *in forma pauperis* status and the complaint was filed. (Dkt. #5). Defendants filed
20 a motion for summary judgment on August 19, 2005. (Dkt. #25). Plaintiff did not file a response

21 ───────────────
22 [2] This number is approximate because defendants' brief is unclear (Dkt. #25 at 3-4) and the medical records attached to the brief are difficult to decipher.

REPORT AND RECOMMENDATION
PAGE -3

to the motion. The matter is now ready for review.

## DISCUSSION

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See Anderson*, 477 U.S. at 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See California Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

In addition, the Ninth Circuit has articulated a party's duty to respond to a motion for summary judgment as follows: "When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), *you cannot simply rely on what your complaint says*. Instead, you must set out specific facts in declarations, deposition, answers to interrogatories, or authenticated documents . . . that contradict the facts shown in the defendant's declarations and documents . . . ." *Rand v. Rowland*, 154 F.3d 952, 962-963 (9th Cir. 1998) (emphasis added). Plaintiff was given this precise warning by the court when it issued the order setting deadlines for discovery and dispositive motions in this matter. (Dkt. #23).

REPORT AND RECOMMENDATION
PAGE -4

As previously mentioned, plaintiff alleges that Jail staff denied him constitutionally adequate medical care by failing to provide Alprazolam for his panic attacks. In order to succeed on such a claim, plaintiff must show that "the denial amounts to *deliberate indifference* to serious medical needs of the prisoners." *Toussaint v. McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986) (emphasis added). "While poor medical treatment will at a certain point rise to the level of constitutional violation, mere malpractice, or even gross negligence, does not suffice." *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") Rather, prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay or intentionally interfere with medical treatment. *See* 801 F.2d at 1111.

Here, defendants have produced evidence that they were aware of plaintiff's history of panic attacks and provided treatment to him. Due to the danger of abuse, the Jail provided a non-narcotic substitute to the medication plaintiff had been receiving. This plan was approved by plaintiff's own doctor. Plaintiff, however, was not satisfied with the course of treatment. While it is regrettable that plaintiff was unable to receive his preferred medication while in Jail, plaintiff has not shown that the Jail denied, delayed, or intentionally interfered with his medical treatment. Therefore, he has not shown "deliberate indifference" on the part of Jail staff regarding his medical care. In sum, plaintiff has not satisfied his burden of showing that a genuine issue of material fact exists regarding his claim that defendants provided inadequate medical care. Accordingly, the court recommends that defendants's motion for summary judgment be granted.

///

REPORT AND RECOMMENDATION
PAGE -5

## CONCLUSION

For the foregoing reasons, the court recommends that defendants's motion for summary judgment be granted and this action be dismissed with prejudice. A proposed Order accompanies this Report and Recommendation.

DATED this 27th day of September, 2005.

*[signature]*

Mary Alice Theiler
United States Magistrate Judge